■ In the Matter of ELMARTH BAR & GRILL, INC., Petitioner, v STATE LIQUOR AUTHORITY, Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent State Liquor Authority, dated July 10, 1979, which, after a hearing, adjudged petitioner to have violated

subdivision 5 of section 106 of the Alcoholic Beverage Control Law and suspended petitioner's liquor license for the period of 10 days. Petition granted and determination annulled, on the law, without costs or disbursements, and charges dismissed. The police officer whose testimony constituted respondent's entire case at the hearing testified, *inter alia,* that on the morning in question he saw one individual, an employee of the petitioner, drinking a beer on the licensed premises shortly after 4:30 A.M. and that, upon inquiry, the licensee's principal (Coffey) informed him that the employee under discussion was having a drink after work and that he (Coffey) did not think that it was too late to serve his employee a beer. In sustaining the charge that the petitioner had violated subdivision 5 of section 106 of the Alcoholic Beverage Control Law by permitting the consumption of alcoholic beverages on the licensed premises "later than one-half hour after the start of * * * prohibited hours", the hearing officer specifically credited that portion of the police officer's testimony in which he stated that "on October 14, 1978 on the licensed premises shortly after 4:43 A.M. [the employee] Thomas Taxter consumed beer", but neglected to make any further findings of fact and, more particularly, failed to make *any* finding regarding the statement attributed to the licensee's principal or otherwise reflecting upon his actual or constructive knowledge of the incident in question. In fact, the totality of the evidence before the hearing officer indicates rather clearly that Coffey was not even present in the barroom at the time of the alleged occurrence, but was working downstairs in the building's basement. In addition, during the 24 months that the petitioner had been open for business, this was the first alleged instance in which any section of the Alcoholic Beverage Control Law had been violated. The respondent adopted the findings of the hearing officer and suspended the petitioner's license for 10 days. The determination must be annulled. In the absence of any finding regarding the actual or constructive knowledge by Coffey or anyone else in authority of the alleged after-hours consumption of alcohol, respondent lacked a factual basis for concluding that the petitioner had "permitted" the foregoing in violation of subdivision 5 of section 106 of the Alcoholic Beverage Control Law. ("Nor shall any person be permitted to consume any alcoholic beverages upon any such [licensed] premises later than one-half hour after the start of the prohibited hours of sale provided for in this section.") (See *Matter of Rochdale Mall Wines & Liqs. v State Liq. Auth.,* 29 AD2d 647, affd 27 NY2d 995; *Matter of Goldfinger v State Liq. Auth.,* 8 AD2d 934; see, also, *Matter of Playboy Club of N. Y. v State Liq. Auth. of State of N. Y.,* 23 NY2d 544, 550; *Matter of Migliaccio v O'Connell,* 307 NY 566, 569.) Moreover, while there is some evidence of "permission" in the testimony of the complaining officer, we decline to credit such testimony in the first instance or regard it as substantial in view of the many illogical gaps in his narrative when considered as a whole (e.g., his inability to recall whether he may have been inside the licensed premises at an earlier time during the same evening; his inability to recall whether there may have been an undercover officer stationed inside the licensed premises on the evening in question; and his impetus for first calling for a back-up unit and then entering the licensed premises when, prior to his entry, he had not observed any illegal conduct transpiring therein). In the absence of any substantial evidence of actual or constructive knowledge, the finding that petitioner had violated the Alcoholic Beverage Control Law by *permitting* the after-hours consumption of alcohol cannot be permitted to stand (see *Matter of Playboy Club of N. Y. v State Liq. Auth. of State of N. Y., supra;* see, also, *Matter of Faculty-Student Assn. of State Univ. Coll. at Oneonta v*

*Roth,* 54 AD2d 810, affd 42 NY2d 930). Titone, J. P., Gulotta and Martuscello, JJ., concur.

Gibbons, J., dissents and votes to confirm the determination and dismiss the proceeding on the merits, with the following memorandum: The arresting police officer testified at the hearing that, at about 4:43 A.M. on October 14, 1978, when he entered the licensed premises, he saw Thomas Taxter, an employee of the licensee, drinking beer from a bottle which was marked Heinekens Beer and which was at his lips. He took possession of the bottle and he then engaged in a conversation with Mr. Elmo Coffey, the president of the licensee, who told the officer that he did not "think that it was too late to serve [the employee] a beer" upon which the officer served Coffey with a summons for the violation. The hearing officer credited the testimony of the arresting officer and determined "that on October 14, 1978 at the licensed premises shortly after 4:43 A.M. Thomas Taxter consumed beer, and I so find." The testimony of the arresting officer is not incredible as a matter of law, and since the record contains substantial evidence to support the finding that the petitioner violated subdivision 5 of section 106 of the Alcoholic Beverage Control Law, the determination of the respondent should be confirmed (see *Matter of Nero's Pad v New York State Liq. Auth.,* 54 AD2d 716).